**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
----------------------------x
                            :
RICHEL CARLUS,              :
                            :
        Plaintiff,          :
                            :
    v.                      :   Case No. 3:11-CV-172(AWT)
                            :
CONNECTICUT DEPARTMENT OF   :
PUBLIC HEALTH, STEVE MESSER,:
PATRICIA BISACKY, LORI      :
MATHIEU, CINDY SEK, MARCIA  :
COSTA-RODRIGUEZ, AND ANNE   :
STRANT ESDEN,               :
                            :
        Defendants.         :
                            :
----------------------------x
```

<u>**RULING ON MOTION FOR SUMMARY JUDGMENT**</u>

Plaintiff Richel Carlus, proceeding <u>pro se</u>, brings this action against defendants Connecticut Department of Public Health ("DPH"), Steve Messer ("Messer"), Patricia Bisacky ("Bisacky"), Lori Mathieu ("Mathieu"), Cindy Sek ("Sek"), Marcia Costa-Rodriguez[1] ("Costa-Rodriguez"), and Anne Strant Esden ("Esden") alleging employment discrimination in violation of Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e <u>et</u> <u>seq.</u>, and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-51 <u>et</u> <u>seq.</u>  The defendants have moved for summary judgment.  For the reasons set forth

---

[1] The Complaint lists this defendant's last name as Costa-Rodriguez, but both sides sometimes spell her name Costa-Rodrigues and sometimes spell her name Costa-Rodriguez.

below, the defendants' motion for summary judgment is being granted.

## I.    FACTUAL BACKGROUND

The plaintiff was hired in May 2008 as an Engineer Intern assigned to the Drinking Water Division of DPH, and he began his position there on June 20, 2008.  The plaintiff was required to complete a six-month working test period before he could become a permanent employee of DPH.  If the plaintiff completed the working test period satisfactorily, he was eligible for permanent appointment to the position of Sanitary Engineer.

During the working test period, the plaintiff was supervised by Messer, who is a Supervising Sanitary Engineer in the Drinking Water Section.  As a Supervising Sanitary Engineer, Messer's duties include, inter alia, overseeing employees assigned to his unit for training, internships and other projects.  While supervising the plaintiff and reviewing his work, Messer observed that the plaintiff made numerous similar repetitive technical errors and that such errors were not being made by other new hires.  (See 56(a)(1) Stmt. ¶ 7[2], Messer Aff. ¶ 7).  Also, several staff members made informal complaints and expressed concerns to Messer regarding the plaintiff's demeanor

---

[2] The plaintiff denies ¶ 7, but the evidence he cites does not create a genuine issue as to the facts he denies.

and inattentiveness.  (See 56(a)(1) Stmt. ¶ 9[3]).  As a result of
the concerns, Messer met with Thomas Malecky ("Malecky"),
Department of Public Health Human Resources Manager, and
Mathieu, Public Health Services Manager, on July 24, 2008 to
discuss the plaintiff's work performance and interpersonal
relations.

On September 17, 2008, a draft Mid-Working Test Period
Evaluation (the "Midterm Evaluation") was completed for
management's review by Messer.  (See 56(a)(1) Stmt. ¶ 11[4]).
After he received feedback from management, Messer finalized the
Midterm Evaluation.  The Midterm Evaluation contained a written
performance appraisal and rated the plaintiff's abilities as
"below average" in seven out of nine categories.  (Messer Aff.
Ex. A).  The plaintiff received the Midterm Evaluation on
September 24, 2008, and after reviewing the Midterm Evaluation
and discussing it with Messer, he signed the bottom on September
26, 2008.  (See 56(a)(1) Stmt. ¶ 12[5], Messer Aff. ¶ 18-19).

Messer met with the plaintiff for one hour on each of
September 29, 2008, October 6, 2008 and October 16, 2008 to
review the plaintiff's projects and provide the plaintiff with

---

[3] The plaintiff denies ¶ 9, but the evidence he cites does not create a
genuine issue as to the fact he denies.
[4] The plaintiff denies ¶ 11, but the evidence he cites does not create a
genuine issue as to the fact he denies.
[5] The plaintiff denies ¶ 12, but the evidence he cites does not create a
genuine issue as to the facts he denies.

one-on-one technical assistance training.  (See 56(a)(1) Stmt. ¶ 15[6]).

On October 29, 2008, the plaintiff received a performance appraisal (the "Final Appraisal") in which he was rated as "less than good" in each of the seven categories.  (See 56(a)(1) Stmt. ¶ 13[7], Carey Aff. Ex. E).  The Final Appraisal concluded,

> Overall, Richel has not demonstrated that he has the ability to use and apply basic engineering theories, principles and methods required to satisfy the minimum requirements of an Engineer Intern with DPH Drinking Water Section and to subsequently advance to the target class of Sanitary Engineer 1.

(Carey Aff. Ex. E; 56(a)(1) Stmt. ¶ 14[8]).  By letter dated October 30, 2008, the plaintiff was informed that he was being dismissed during his working test period based on his performance since the beginning of his employment with DPH on June 20, 2008.  Although Messer drafted the Final Appraisal, he did not have the authority to and did not make the determination that the plaintiff should be dismissed during the working test period.  (See 56(a)(1) Stmt. ¶ 18[9]).

On November 4, 2008, the plaintiff requested an administrative review, known as a Sperl Conference, concerning his dismissal from DPH.  The Sperl Conference was convened on

---

[6] The plaintiff denies ¶ 15, but the evidence he cites does not create a genuine issue as to the facts he denies.
[7] The plaintiff denies ¶ 13, but the evidence he cites does not create a genuine issue as to the fact he denies.
[8] The plaintiff denies ¶ 14, but the evidence he cites does not create a genuine issue as to the fact he denies.
[9] The plaintiff denies ¶ 18, but the evidence he cites does not create a genuine issue as to the fact he denies.

December 5, 2008, and on December 12, 2008, the plaintiff was sent a letter indicating that after a review of the information provided at the Sperl Conference, the decision to dismiss him during the working test period was being upheld.

During the time period relevant to this action, three other individuals were dismissed during their working test periods. Those individuals were a black female, a white female, and a white male.  (See 56(a)(1) Stmt. ¶ 26[10]).

## II.  LEGAL STANDARD

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. Fed. R. Civ. P. 56(c).  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223 (2d Cir. 1994).  When ruling on a motion for summary judgment, the court may not try issues of fact, but must leave those issues to the jury.  See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987).  Thus, the trial court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined . . . to

---

[10] The plaintiff denies ¶ 26, but the evidence he cites does not create a genuine issue as to the fact he denies.

issue-finding; it does not extend to issue-resolution." <u>Gallo</u>, 22 F.3d at 1224.

Summary judgment is inappropriate only if the issue to be resolved is both genuine and related to a material fact. Therefore, the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.  An issue is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson</u>, 477 U.S. at 248 (internal quotation marks omitted).  A material fact is one that would "affect the outcome of the suit under the governing law." <u>Anderson</u>, 477 U.S. at 248.  Only those facts that must be decided in order to resolve a claim or defense will prevent summary judgment from being granted.  Immaterial or minor facts will not prevent summary judgment.  See <u>Howard v. Gleason Corp.</u>, 901 F.2d 1154, 1159 (2d Cir. 1990).

When reviewing the evidence on a motion for summary judgment, the court must "assess the record in the light most favorable to the non-movant and . . . draw all reasonable inferences in its favor." <u>Weinstock v. Columbia Univ.</u>, 224 F.3d 33, 41 (2d Cir. 2000) (quoting <u>Delaware & Hudson Ry. Co. v. Consol. Rail Corp.</u>, 902 F.2d 174, 177 (2d Cir. 1990)).  However, the inferences drawn in favor of the nonmovant must be supported by evidence.  "[M]ere speculation and conjecture" is

insufficient to defeat a motion for summary judgment. Stern v. Trs. of Columbia Univ., 131 F.3d 305, 315 (2d Cir. 1997) (quoting Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d. Cir. 1990)).  Moreover, the "mere existence of a scintilla of evidence in support of the [nonmovant's] position" will be insufficient; there must be evidence on which a jury could "reasonably find" for the nonmovant.  Anderson, 477 U.S. at 252.

Because the plaintiff in this case is proceeding pro se, the court must read the plaintiff's pleadings and other documents submitted by him liberally and construe them in a manner most favorable to the plaintiff.  See Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).  Moreover, because the process of summary judgment is "not obvious to a layman," Vital v. Interfaith Medical Ctr., 168 F.3d 615, 620 (2d Cir. 1999), the district court must ensure that a pro se plaintiff understands the nature, consequences, and obligations of summary judgment, see id. at 620-621.  Thus, the district court may itself notify the pro se plaintiff as to the nature of summary judgment; the court may find that the opposing party's memorandum in support of summary judgment provides adequate notice; or the court may determine, based on thorough review of the record, that the pro se plaintiff understands the nature, consequences, and obligations of summary judgment.  See id.

Here, the defendants served the plaintiff with the notice required by Local Rule 56(b) (see Notice to Pro Se Litigant Opposing Mot. for Summ. J. (Doc. No. 54)), and the defendants clearly mapped out in their memorandum in support of their motion for summary judgment the reasons why they contended the plaintiff could not produce evidence that could establish various elements of his claims.  In addition, a review of the plaintiff's memorandum in opposition to the motion for summary judgment leads the court to conclude that the plaintiff understood what was at issue in the motion for summary judgment and responded to specific points.  Also, although the plaintiff produced evidence in support of his position (see Pl.'s Mem. Opp. Mot. Summ. J. (Doc. No. 55-1) Exs. A-P), he simply lacks evidence that creates a genuine issue of material fact with respect to the instant motion.  Therefore the court concludes that the plaintiff understands the nature, consequences, and obligations of summary judgment.

## III. DISCUSSION

### A.   Individual Defendants

In his complaint, the plaintiff named Messer, Bisacky, Mathieu, Sek, Costa-Rodriguez and Esden as defendants.  The defendants note that Bisacky, Mathieu, Sek, Costa-Rodriguez and

Esden were never served in this action,[11] and thus, the court does not have personal jurisdiction over them.  See Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd., 484 U.S. 97, 104 (1987) ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied.").

However, even if the plaintiff had properly served those individuals, his claims against the individual defendants fail. "[I]ndividuals are not subject to liability under Title VII." Wrighten v. Glowski, 232 F.3d 119, 119 (2d Cir. 2000) (citing Tomka v. Seiler Corp., 66 F.3d 1295, 1313-14 (2d Cir. 1995), abrogated on other grounds by Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998) and Faragher v. City of Boca Raton, 524 U.S. 775 (1998)).  "[O]nly employer-entities have liability under Title VII." Miner v. Town of Cheshire, 126 F. Supp. 2d 184, 200 (D. Conn. 2000).  Likewise, "there is no individual liability under CFEPA." Anderson v. Derby Bd. of Educ., 718 F. Supp. 2d 258, 267 (D. Conn. 2010) (citing Perodeau v. City of Hartford, 259 Conn. 729, 743-44 (2002)).  Therefore, the defendants' motion for summary judgment is being granted as to the plaintiff's claims against Messer, Bisacky, Mathieu, Sek, Costa-Rodriguez and Esden.

---

[11] In his opposition memorandum, the plaintiff appears to state that these individuals are not intended to be defendants, but are instead "witness[es] to the case." (Pl.'s Mem. Opp. Mot. Summ. J. at 13).

B. **Department of Public Health**

The plaintiff claims that DPH dismissed him during the working test period because of his race in violation of Title VII and CFEPA.  Title VII and CFEPA discrimination claims are analyzed under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973). See Brown v. City of Syracuse, 673 F.3d 141, 150 (2d Cir. 2012) (Title VII); Rogers v. First Union Nat'l Bank, 259 F. Supp. 2d 200, 204 (D. Conn. 2003) (CFEPA).  Under this framework, "[a] plaintiff must establish a prima facie case; the employer must offer through the introduction of admissible evidence a legitimate non-discriminatory reason for the discharge; and the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext." McBride v. BIC Consumer Prods. Mfg. Co., Inc., 583 F.3d 92, 96 (2d Cir. 2009).  "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).

1. *Prima Facie Case*

"To establish a claim of racial discrimination a claimant must show: (1) he belonged to a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) that the adverse employment action

occurred under circumstances giving rise to an inference of discriminatory intent." Brown, 673 F.3d at 150 (internal quotation marks omitted).  The Second Circuit "ha[s] characterized the evidence necessary to satisfy this initial burden as 'minimal' and 'de minimis.'" Zimmermann v. Assocs. First Capital Corp., 251 F.3d 376, 381 (2d Cir. 2001).

The defendants only argue that the plaintiff cannot establish a prima facie case because he has not shown that his dismissal during the working test period was done under circumstances giving rise to an inference of discrimination. However, the plaintiff identifies three white co-workers he contends he was treated less favorably than: Casey Fleming ("Fleming"), Costa-Rodriguez and Alex Tabatabai ("Tabatabai"). The plaintiff has offered evidence in the form of his affidavit that Messer spent less time working with and training him than with Fleming, Costa-Rodriguez and Tabatabai.  The plaintiff avers that Messer gave Fleming one-on-one training in his cubicle and instructions on how to accomplish projects.  He also avers that Messer held a job training session with Costa-Rodriguez and Tabatabai, but he was not invited to attend.

Additionally, the plaintiff avers that on August 12, 2008, Messer assigned him four lengthy and difficult projects, while Fleming was only assigned one.  The plaintiff also avers that he

requested and was denied time off from work, but Costa-Rodriguez
was granted her request for time off.

The plaintiff has presented evidence that Messer treated
the plaintiff differently than his white co-workers.  Although
Messer did not make the ultimate determination that the
plaintiff should be dismissed during the working test period,
Messer was responsible for drafting the plaintiff's Midterm
Evaluation and Final Appraisal.  Therefore, the plaintiff has
satisfied his de minimus burden of showing circumstances that
"giv[e] rise to an inference of discriminatory intent" for
purposes of establishing a prima facie case.  <u>Brown</u>, 673 F.3d at
150.

### 2.   *Legitimate Non-Discriminatory Reason*

"If the plaintiff establishes a prima facie case of
discrimination, the burden shifts to the employer to come
forward with a legitimate, nondiscriminatory reason for the
adverse employment action. If the employer does so, the burden
then returns to the plaintiff to demonstrate that race was the
real reason for the employer's adverse action."  <u>Reynolds v.
Barrett</u>, 685 F.3d 193, 202 (2d Cir. 2012) (internal citation
omitted).

The defendant states that the plaintiff was dismissed
during the working test period "due to his lack of proven
knowledge, skills, and abilities to meet the requirements of the

job description." (Defs.' Mem. Supp. Summ. J. (Doc. No. 53-1)
at 12). While supervising the plaintiff's work, Messer noted
that the plaintiff was repeatedly making technical mistakes.
Messer detailed many of the issues with the plaintiff's work in
the attachment to the Midterm Evaluation and explained why he
rated the plaintiff as "below average" in quality of work,
quantity of work, cooperation, initiative, judgment, job
knowledge and interpersonal skills. (Messer Aff. Ex. A). The
plaintiff was rated "average" in the two remaining categories:
ability to learn new duties and dependability. Id.

    Additionally, the evidence presented by the defendants
shows that Messer met with the plaintiff individually on a
number of occasions to go over his work and help improve the
plaintiff's technical skills. On each occasion, Messer took
notes on the projects and technical concepts that he reviewed
with the plaintiff, as well as the problems that he saw in the
plaintiff's work. These notes, which have dates ranging from
September 26, 2008 to October 16, 2008, reflect that the
plaintiff continued to make many of the same errors that were
noted by Messer in the Midterm Evaluation.

    With respect to the plaintiff's request for time off, the
defendant states that the plaintiff's request was denied because
at the time he made the request the decision had already been
made that he would be dismissed and the time that he had

requested to take off was after October 30, 2008, i.e. the date of dismissal.  In addition, the plaintiff had not accrued the amount of time off that he requested (fourteen days), whereas Costa-Rodriguez had transferred to DPH from another department where she had accrued sufficient time for her request to take one day off to be granted.

Because the defendant has proffered a legitimate non-discriminatory reason for termination of the plaintiff's employment, the burden shifts to the plaintiff to demonstrate that the given reason is a pretext for discrimination and that race was the real reason for his dismissal.

### 3. Pretext

In order to meet his burden of establishing pretext, "[t]he plaintiff must produce 'sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons' presented by the defendant were false, and that 'more likely than not discrimination was the real reason for the employment action.'" Mavrommatis v. Carey Limousine Westchester, Inc., 476 Fed. App'x 462, 465 (2d Cir. 2011) (quoting Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000) (internal quotation marks and alterations omitted)). "In short, the question becomes whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination." Weinstock, 224 F.3d at 42.  "It is not enough

-14-

. . . to disbelieve the employer; the factfinder must [also] believe the plaintiff's explanation of intentional discrimination." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 519 (1993).

The plaintiff argues that the defendant's reason for terminating his employment is pretextual because when he was originally interviewed by DPH staff, they found him to have "excellent communication skill[s] and good technical knowledge." (Pl.'s Mem. Opp. Mot. Summ. J. at 10). However, the working test period is considered "an extension of the examination process." (Carey Aff. Ex. B). Pursuant to Article 11 of the Engineering, Scientific & Technical Union (P-4) Contract, "a determination of unsatisfactory performance during a Working Test Period shall be tantamount to a failure of the competitive exam." (Carey Aff. Ex. B). Thus, the purpose behind the working test period is to provide for additional assessment of an employment candidate prior to offering him or her a permanent position. Use of such a system contemplates that an employee's actual on-the-job performance may vary from his or her performance during an interview. Therefore, the fact that the plaintiff performed well during his interview does not create a genuine issue of material fact as to whether he performed adequately during the actual working test period.

The plaintiff also argues that "Messer terminated the plaintiff['s] employment without regard to the Agency training policy of [requiring a] minimum of six months [for the working test period]." (Pl.'s Mem. Opp. Mot. Summ. J. at 10).  However, the statute which provides that state employees shall complete working test periods before becoming eligible for permanent employment also provides that:

> At any time during the working test period, after fair trial, the appointing authority may remove any employee if, in the opinion of such appointing authority, the working test indicates that such employee is unable or unwilling to perform his or her duties so as to merit continuance in such position and shall report such removal to the commissioner.

Conn. Gen. Stat. § 5-230.  Thus, terminating the plaintiff's employment prior to the completion of the working test period was permissible if DPH determined that the plaintiff was unable to meet the job requirements.

Finally, the plaintiff argues that the fact that he completed projects while at DPH refutes "the baseless claim of poor performance during the working test period." (Pl.'s Mem. Opp. Mot. Summ. J. at 11).  However, the plaintiff does not offer evidence as to the length or complexity of the projects, or how good a job he did on them.  The plaintiff provides a copy of the "Windsor Locks Source Abandonment" project as evidence that he completed projects.  The document that he submitted is five pages and the plaintiff's name appears on one page.

However, the plaintiff does not state how much or which work on the project he was actually responsible for completing. (See Pl.'s Mem. Opp. Mot. Summ. J. Ex. A). Additionally, the plaintiff states that the claim of poor performance is controverted by his academic record, the fact that he has since worked as a field Engineer II with another company and the fact that he has received a Master's Degree in Chemical Engineering. However, the plaintiff has not produced any evidence to support these facts or to show how they are an indication of his abilities during the period from June 2008 to October 2008. Thus, the plaintiff has failed to proffer evidence that could show that the reason given by DPH for terminating his employment is pretextual.

In addition to showing that the employer's proffered reason is a pretext for discrimination, the plaintiff is required to show that the actual reason for terminating his employment was his race. In the present case, the plaintiff has not produced any evidence that Messer or DPH acted with a discriminatory animus. While the plaintiff alleges that Messer treated him unequally because of his race, the plaintiff's mere allegations are insufficient create a genuine issue of material fact. See Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995) ("[M]ere conclusory allegations or denials in legal memoranda . . . are not evidence and cannot by themselves create a genuine

issue of material fact where none would otherwise exist." (internal quotation marks omitted)).  The plaintiff points to no conduct on the part of Messer which could show that he harbored a discriminatory animus.

Additionally, the evidence submitted by the plaintiff shows that one of the white co-workers the plaintiff claims received more favorable treatment resigned at the end of her working test period to "avoid termination."  (Pl.'s Mem. Opp. Mot. Summ. J. Ex. L).  The fact that the white co-worker was going to be terminated undermines the plaintiff's speculative allegation that his employment was terminated because of his race.

Because the plaintiff has not proffered evidence that could show that the reason given for his termination was pretextual, and even if he could, he has not proffered evidence that could show that the real reason for termination of his employment was his race, the motion for summary judgment is being granted as to the plaintiff's claims for violation of Title VII and CEFPA by defendant DPH.

## IV.  CONCLUSION

For the reasons set forth above, the defendants' Motion for Summary Judgment (Doc. No. 53) is hereby GRANTED.  Judgment shall enter in favor of the defendants on all the claims in the plaintiff's complaint.

The Clerk shall close this case.

It is so ordered.

Dated this 14th day of March, 2014, at Hartford,

Connecticut.

_____/s/_____
Alvin W. Thompson
United States District Judge
